# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JOHN ROUSE                        CIVIL ACTION

VERSUS                          NO. 18-583-JWD-EWD

JASON ARD, ET AL.

## RULING AND ORDER ON
## PLAINTIFF'S MOTION FOR RECONSIDERATION

This matter comes before the Court on the *Motion for Reconsideration* (Doc. 32) filed by Plaintiff John Rouse ("Plaintiff"). Sheriff Jason Ard ("Sheriff Ard") and Deputy Christian Williams ("Williams") (collectively, "Defendants") oppose the motion. (Doc. 34.) Plaintiff filed a reply. (Doc. 35.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Plaintiff's motion is denied.

## I. Relevant Factual Background

A full recitation of the facts was provided in the Court's *Ruling and Order* (Doc. 31) on Defendants' *Motion for Summary Judgment* (Doc. 20) ("*Defendants' MSJ*"). The Court will provide here only those facts relevant to this motion.

Specifically, on May 26, 2017, while Plaintiff was shopping in Denham Springs, Louisiana, Williams arrested Plaintiff, seized him, and took him to jail. (*Rouse Decl.* ¶ 5; *Compl.* ¶ 8; *Local Rule 56(a) Statement of Undisputed Material Facts* ("*SUMF*") ¶ 1, Doc. 20-1; *Statement of Genuinely Disputed Material Facts that Preclude Summary Judgment* ("*SGDMF*"), Doc. 22-4).) Plaintiff asserts that Williams charged him with the crime of Public Intimidation and Retaliation in violation of La. Rev. Stat. Ann. § 14:122, a felony punishable by up to five years in prison at hard labor. (*Rouse Decl.* ¶ 5; *Compl.* ¶ 9.)

A bill of information was filed by the Livingston Parish District Attorney arising out of the May 26, 2017, arrest in *State of Louisiana v. John Joseph Thomas Rouse*, Docket No. 114513, Twenty-First Judicial District Court, Parish of Livingston, State of Louisiana, charging Plaintiff only with violations of La. Rev. Stat. Ann. § 14:103.A(2) ("Disturbing the Peace") and La. Rev. Stat. Ann. § 14:108 ("Resisting an Officer"). (*SUMF* ¶ 2, Doc. 20-1; *SGDMF*, Doc. 22- 4.) After a trial on the merits, Plaintiff was duly convicted on both of these charges. (*SUMF* ¶ 5, Doc. 20-1; *SGDMF*, Doc. 22-4.)

No bill of information or indictment was ever filed charging Plaintiff with violating La. Rev. Stat. Ann. § 14:122 ("Public Intimidation"). (*SUMF* ¶ 3, Doc. 20-1; *SGDMF*, Doc. 22-4.) Plaintiff was never prosecuted for violating this statute. (*SUMF* ¶ 4, Doc. 20-1; *SGDMF*, Doc. 22-4; *Rouse Decl.* ¶ 4, Doc. 22-1.) The district attorney refused the charge. (*Rouse Decl.* ¶ 4, Doc. 22-1; *Williams Dep.* 9, Doc. 22-3 at 2.).

Plaintiff filed the instant suit on May 26, 2018. (*Compl.*, Doc. 1.) Plaintiff asserts that Williams charged him with the crime of Public Intimidation and Retaliation in violation of La. Rev. Stat. Ann. § 14:122. (*Rouse Decl.* ¶ 5; *Compl.* ¶ 9). Plaintiff claims damages for "past and future mental and emotional distress and outrage; past and future loss of enjoyment of life; past and future loss of reputation; past and future lost business, lost business opportunities, lost earnings, and lost earning capacity; and attorney's fees and all costs and expenses associated with Defendants' malicious prosecution." (*Compl.* ¶ 50; Doc. 32 at 2). Specifically, Plaintiff alleges that Williams's allegation that Plaintiff committed Public Intimidation increased his attorney fees from "less than $1,000 to $4,500" and increased his bail from "from $500 to each misdemeanor to $28,000 for the felony[.]" (Doc. 35 at 2–3).

On June 26, 2019, Williams and Sheriff Ard filed *Defendants' MSJ*. (Doc. 20.) On January 8, 2020, the Court granted in part *Defendants' MSJ*. (Doc. 31 at 17). The Court

2

dismissed all of Plaintiff's federal claims and declined to exercise supplemental jurisdiction over Plaintiff's state law malicious prosecution and vicarious liability claims. (*Id.*)

Plaintiff filed the instant *Motion to Reconsider* on February 5, 2020 (Doc. 32), which Defendants opposed (Doc. 34). Plaintiff asks the Court to reconsider its *Ruling and Order* declining to exercise supplemental jurisdiction over his Louisiana state law claims. (Doc. 32 at 1.) Plaintiff argues that these claims are properly before the Court under diversity jurisdiction. (Doc. 32-1 at 1.)

## II.    Standard for Motions for Reconsideration

When a motion for reconsideration " 'calls into question the correctness' of the judgment," the Court considers it under Fed. R. Civ. P. 59(e). *Allen v. Envirogreen Landscape Prof'ls, Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017) (per curiam) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)). "Rule 59(e) motions serve 'the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.' " *Id.* (quoting *Templet*, 367 F.3d at 477). " 'Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.' " *Id.* (quoting *Templet*, 367 F.3d at 479). "Accordingly, a motion for reconsideration 'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.' " *Id.* (quoting *Templet*, 367 F.3d at 479).

## III.    Discussion

### A.  Parties' Arguments

Plaintiff argues it should be "undisputed that the amount in controversy exceed $75,000 as the good faith allegations of Rouse's Complaint reflect damages that more probably than not exceed that amount." (Doc. 32-1 at 2). Plaintiff seeks damages for "past and future mental and emotional distress and outrage; past and future loss of enjoyment of life; past and future loss of

reputation; past and future lost business, lost business opportunities, lost earnings, and lost earning capacity; and attorney's fees and all costs and expenses associated with Defendants' malicious prosecution." (*Id.*) Plaintiff alleges that the "general damages alone are sufficient to establish the Court's subject matter jurisdiction under 28 U.S.C. § 1332." (*Id.*).

In support of his argument, Plaintiff cites to several cases with damage awards exceeding $75,000 in cases involving mental suffering, inconvenience, humiliation, embarrassment, and malicious prosecution. (Doc. 32-1 at 2–3 (citing *Dos Santos v. Belmere Limited Partnership*, 2017-0283, 2017 WL 4082287 (La. Ct. App. 1st Cir. 2017); *Sommer v. State, Dept. of Transp. and Development*, 758 So. 2d 923 (La. Ct. App 1st Cir. 2000); *Guillory v. State Farm Ins. Co.*, 662 So. 2d 104 (La. Ct. App 4th Cir. 1995); *Vidrine v. U.S.*, 846 F. Supp. 2d 550 (W.D. La. 2011)).) Plaintiff says even if his claim is "valued at a fraction of those awarded in *Sommer*, *Guillory*, *Dos Santos*, and *Vidrine*, the amount in controversy in this case would exceed $75,000." (Doc. 32-1 at 3).

Defendant counters by saying, "Plaintiff's claim does not involve an amount in controversy in excess of $75,000," and as such, "this Court does not have original jurisdiction over the state law claim." (Doc. 34 at 3). Defendant argues that, even if Plaintiff could maintain a claim for malicious prosecution, "no reasonable jury could ever award in excess of $75,000," for that claim. (*Id.* at 4). In addition, Defendant states the case law of awarding damages for malicious prosecution shows that Plaintiff's damages could not "reasonably come anywhere near the jurisdictional threshold." (*Id.*). In support of their contention, Defendants cite several cases which they claim prove that Plaintiff's case does not rise above $75,000. (*Id.* at 5 (citing *Bernal v. Crescent Foundations, LLC*, 266 So. 3d 558 (La. Ct. App. 5th Cir. 2019); *Brown v. City of Monroe*, 135 So. 3d 792 (La. Ct. App. 2d Cir. 2014); *LeBlanc v. Pynes*, 69 So. 3d 1273 (La. Ct. App. 2d Cir. 2011).)

Plaintiff replies by stating that the central issue in the case is whether Plaintiff alleged in good faith a claim that exceeds $75,000 and that, for a dismissal, it must appear to a legal certainty that the claim is for less than the jurisdictional amount. (Doc. 35 at 1–2).

### B.  Standard for amount in controversy

Federal courts are courts of "limited jurisdiction," and it is presumed "that a suit lies outside this limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Original jurisdiction based on diversity jurisdiction requires a cause of action between citizens of different States and an amount in controversy that exceeds the sum of $75,000. 28 U.S.C. § 1332. "The burden of establishing subject matter jurisdiction in federal courts rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

The sum claimed by the plaintiff controls if "the claim is apparently made in good faith." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)). For dismissal "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289, 58 S. Ct. at 590. The legal certainty concept appears equivalent to a conclusion that as a matter of law, the jurisdictional amount cannot be recovered or, stated differently, no reasonable jury could award that amount. 14AA Charles Alan Wright & Arthur M. Miller, *Federal Practice and Procedure Jurisdiction* § 3702 (4th ed. 2020). Said another way, "it must appear to a legal certainty that the plaintiff's claim is really for less than the jurisdictional amount to justify a dismissal for lack of subject matter jurisdiction." *Id.*; *see also St. Paul Mercury*, 303 U.S. 289, S. Ct. 586, 590.

When the amount in controversy is challenged by the defendant or the court, the plaintiff must allege facts that it is not a legal certainty that the claims involve less than the jurisdictional

amount. 15 Moore's Federal Practice § 102.107 (3d edition 2020); Wright, *supra*, at § 3702.2. The plaintiff must do so by a "preponderance of the evidence" with competent proof by showing that "there is a possibility of recovering more than the jurisdictional minimum[.]" Moore, *supra*, at § 102.107; Wright, *supra*, at § 3702.2. If the amount in controversy is challenged, the court will usually rely upon the materials in the complaint and other materials attached or referred to in it which will make it "facially apparent" that the amount in controversy has or has not been met. Wright, *supra*, at § 3702.2.

### C.  Analysis

Plaintiff has only one remaining claim: a Louisiana state law claim for malicious prosecution for his arrest for the crime of Public Intimidation. Therefore, for this Court to have original jurisdiction under 28 U.S.C. § 1332, the parties must be diverse and the damages Plaintiff claims for the malicious prosecution must exceed $75,000.  Because both parties contend they are diverse (Doc. 32-1 at 2; Doc. 34 at 3), and because they are in fact diverse (*see Compl.*, Doc. 1 at 1), the sole issue here is the amount in controversy.

Since Plaintiff is invoking federal jurisdiction in this case, he has the burden of proving the claim meets the jurisdictional threshold of exceeding $75,000 by a preponderance of the evidence with competent proof. Moore, *supra*, at § 102.107; Wright, *supra*, at § 3702.2.  Having carefully considered the matter, the Court finds that Plaintiff has failed to satisfy his burden.  In short, the instant case is much more analogous to those cited by the Defendant, where the damages did not exceed $75,000, than those cited by Plaintiff, where the damages met the requisite amount.  As a result, Plaintiff's motion will be denied.

### 1. Plaintiff's Cases Are Distinguishable

Plaintiff relies on several cases to support his argument that he met his burden, including

*Dos Santos v. Belmere Limited Partnership*, 2017-0283, 2017 WL 4082287 (La. Ct. App. 1st Cir. 2017); *Sommer v. State, Dept. of Transp. and Development*, 758 So. 2d 923 (La. Ct. App 1st Cir. 2000); *Guillory v. State Farm Ins. Co.*, 662 So. 2d 104 (La. Ct. App 4th Cir. 1995); *Vidrine v. U.S.*, 846 F. Supp. 2d 550, (W.D. La. 2011). However, each of these cases is distinguishable.

In *Dos Santos*, Santos, Durate, and Rodrigues were roommates in Belmere Luxury Apartments (Luxury) in Houma, Louisiana. 2017 WL 4082287 at *1. Plaintiffs filed suit against Luxury for throwing away most of their personal belongings, including birth certificates, immigration papers, family pictures, children's gifts and drawings, and traveling souvenirs, in a garage space they had rented out. *Id.* at *2, *10, *11. As a result of losing their property, the men had to accept charitable housing, food, and clothing. *Id.* at *11. In addition, the men had continuing mental issues due to the loss which they demonstrated in their "emotionally fraught testimony." *Id.* The jury awarded each plaintiff over $300,000 for property loss, income loss, and general damages. *Id.* at *3.

In *Sommer*, Cheryl Sommer filled a § 1983 action against Department of Transportation and Development (DOTD) and other state employees in which she sought damages for gross negligence, defamation, and intentional infliction of mental suffering. 758 So. 2d at 928. While an employee of the Mississippi River Bridge Authority (MRBA), Sommer became ill and ultimately used her acquired sick leave during which time she was hired as a Customs Inspector. *Id.* at 927–28. After she was hired by Customs on a one-year probationary period, she continued to use her MRBA employee benefits with the knowledge and permission of her supervisors and in accordance with MRBA practices. *Id.* at 928. She was terminated by MRBA in February 1989. *Id.* In May 1989, employees of MRBA conspired to have Sommer fired by Customs. *Id.* Mark Falcon, an agent and attorney for the State, DOTD, and MRBA, contacted Customs alleging that Sommer

was under investigation by DOTD and that she was "milking the system" by fraudulently using her accrued leave. *Id.* Falcon also sent Customs a copy of MRBA's termination letter and Sommer's medical records. *Id.* at 931. Based on the information provided by MRBA, Sommer was terminated by Customs in December 1989. *Id.* at 928. The trial court awarded, and the appellate court upheld, a general damage award of $1,000,000 for loss of reputation due to defamation and mental suffering Sommer endured for eight years and over $400,000 for lost income and lost future wages. *Id.* at 933, 948–49.

In *Guillory*, Ben Guillory filed suit against State Farm for breach of contract and claimed damages for defamation, discrimination, loss of income, loss of business opportunity, and mental anguish. 662 So. 2d at 108. Guillory was an insurance agent for State Farm since 1980. *Id.* at 107. In 1990, State Farm placed Guillory on a "loss control program" which applied to agents with the "most serious problems." *Id.* at 107, 111. Guillory challenged this program which ultimately led to the lawsuit. *Id.* at 107. The court found no evidentiary basis for the claim of defamation. *Id.* at 112. However, the court upheld the trial court's finding that State Farm discriminated against Guillory in the manner in which it administered the loss control program. *Id.* at 114. The trial court awarded, and the appellate court upheld the damage award of $350,000 for general damages. *Id.* at 119.

In *Vidrine*, Hubert Vidrine brought a claim for malicious prosecution against law enforcement officers of the United States government acting in the scope of their employment. 846 F. Supp. 2d at 555.  Vidrine claimed in September 1996, agents of the FBI, EPA, United States Marshal Service, the United States Coast Guard, and the Louisiana State police executed a search warrant on Canal Refining Company which was a facility where Vidrine was a manager. *Id.* More than three years after the execution of the search warrant, in 1999, Vidrine was indicted on one

count of knowingly storing hazardous waste on the property. *Id.* Four years after the indictment, the government voluntarily dismissed the claims against Vidrine. *Id.* Vidrine sought damages for loss of earning capacity, lost income, damages to reputation, emotional distress, mental anguish, loss of enjoyment of life, and humiliation. *Id.* at 629–30. The total recovery in this case was $1,677,000. *Id.* at 638.

Although Plaintiff in this case asserts claims for damages that are similar to the plaintiffs in *Dos Santos*, *Sommer*, *Guillory* and *Vidrine*, the facts in those cases are distinguishable from the facts of this case. In *Dos Santos*, the plaintiffs essentially lost everything they owned, including important personal paperwork which prevented the men from working for eight months for which plaintiffs introduced an economic lost estimate prepared by an economist. 2017 WL 4082287 at *2–*3. In *Sommer*, the plaintiff experienced continued mental distress from multiple defamatory publications over a long period of time and lost the opportunity to be a Customs agent which was her ultimate life's ambition. 758 So. 2d at 949. In *Guillory*, the plaintiff suffered a great deal of mental anguish, stress, and humiliation as a result of discrimination which required him to see a social worker 70 times for therapy. 662 So. 2d at 116. In *Vidrine*, the government dismissed the charges more than seven years after the police executed the search warrant and more than four years after Vidrine had been indicted which meant his ongoing troubles lasted for over ten years. 846 F. Supp. 2d at 555. In all the cases discussed *supra*, the plaintiffs suffered and produced evidence to prove severe injuries and damages.

Here, Plaintiff's case is very different. Unlike *Dos Santos*, Plaintiff has submitted no evidence or alleged facts to show the value of damages for lost earnings or lost business. Unlike *Sommer* or *Guillory*, Plaintiff has submitted no evidence showing long-term mental or medical health treatment due to his arrest for Public Intimidation. Unlike *Vidrine*, Plaintiff was never

charged with Public Intimidation, nor were criminal proceedings ever instituted against him for that crime. (Doc. 20-3). Instead, Plaintiff was validly arrested and convicted on other charges, including Disturbing the Peace and Resisting an Officer. (Doc. 31 at 14). Thus, no reasonable jury would award damages in excess of $75,000 for a malicious prosecution claim for a crime with which the Plaintiff was never charged.

## 2. Defendants' Cases Are on Point

Additionally, Defendants rely on case law which they claim supports their position that Plaintiff's damages cannot meet the jurisdictional threshold, including *Bernal v. Crescent Foundations, LLC*, 266 So. 3d 558 (La. Ct. App. 5th Cir. 2019); *Brown v. City of Monroe*, 135 So. 3d 792 (La. Ct. App. 2d Cir. 2014); *LeBlanc v. Pynes*, 69 So. 3d 1273 (La. Ct. App. 2d Cir. 2011). The Court finds these cases more analogous to the case at bar.

For example, in *Bernal*, Daniel Bernal went to retrieve his tools and a trailer from Crescent Foundations (Crescent) where Bernal had worked as a diesel mechanic. 274 So. 3d at 561. Crescent's manager threatened to have Bernal arrested for theft and trespassing. *Id.* Bernal filed suit seeking damages for the tools and trailer that he owned which Crescent would not allow him to collect from the property. *Id.* After Bernal filed charges, Crescent allowed him to retrieve his items from the property, but they were damaged *Id.* Thereafter, Crescent's manager followed through on his threats and pressed criminal charges against Bernal for fraud and theft. *Id.* Bernal was arrested and jailed for 24 hours. *Id.* Because of this, he incurred attorney's fees and missed time for work due to the criminal charges. *Id.* The court found that as a result of Crescent's manager's police report, Bernal was arrested for two charges of felony theft and jailed for two days. *Id.* at 565. The trial court granted, and the appellate court affirmed, $10,000 in damages for Bernal's two days in jail and $2,500 in attorney fees to defend against the theft charges that were

ultimately dismissed. *Id.* at 564, 568.

In *Brown*, Annette Brown asserted claims of false arrest, false imprisonment, and malicious prosecution against the City of Monroe, Louisiana, and the Sheriff of Ouachita Parish. 135 So. 3d at 793–94. Brown was arrested for aggravated battery and spent one hour in jail. *Id.* at 795–96. The arrest of Brown was a case of mistaken identity, and the charge was ultimately dropped. *Id.* The appellate court found that Brown presented enough evidence to prove that she "wrongfully incurred a $1,225 fee to compensate a bail bondsman and a loss of $145 in wages in her inability to work for two days." *Id.* at 799. In addition, the appellate court agreed that Brown should be awarded $20,000 in general damages for mental suffering from being arrested in front of her co-workers and incarcerated in the city jail. *Id.*

In *LeBlanc*, Deborah LeBlanc and Teri Shirey worked for Cash Bank Loans. 69 So. 3d at 1277. LeBlanc was fired and Shirey resigned. *Id.* Plaintiffs were arrested and charged with felony theft based on charges filed by the defendant. *Id.* at 1278. Both women spent the night in jail. *Id.* The charges against both women were dismissed nine months later. *Id.* Plaintiffs filed suit for malicious prosecution, defamation, and intentional infliction of emotional distress. *Id.* The trial court found that the documentation of theft provided by defendants was likely fabricated. *Id.* Shirey was awarded over $16,000 in special damages and $25,000 in general damages. *Id.* at 1279. LeBlanc was awarded over $10,000 in special damages and $20,000 in general damages. *Id.* The appellate court upheld both damage awards. *Id.* at 1285.

Thus, the amount of damages the plaintiffs received in Defendants' authority failed to meet the jurisdictional threshold of over $75,000. Similarly, in the case at hand, Plaintiff too lacks the damages required to meet the jurisdictional required threshold. In *Bernal*, *Brown*, and *LeBlanc*, the plaintiffs were jailed for crimes, but the charges were ultimately dismissed. 274 So. 3d at 561;

135 So. 3d at 793–94; 69 So. 3d at 1278. They were all awarded damages as a result of their incarceration including mental anguish, lost wages, and attorney's fees. 274 So. 3d at 564, 568; 135 So. 3d at 799; 69 So. 3d at 1279. However, Plaintiff cannot claim damages for lost wages, attorney's fees, and mental anguish that he incurred as a result of crimes for which he was ultimately convicted. Even if Plaintiff was able to recover damages related to attorney's fees, costs, and expenses associated with Defendants' malicious prosecution, such an amount would not come near the jurisdictional threshold in excess of $75,000.

### 3. Summary

Motions for reconsideration "serve 'the narrow purpose of allowing a party to correct *manifest* errors of law or fact or to present newly discovered evidence,' " and " '[r]econsideration of a judgment after its entry is an *extraordinary remedy that should be used sparingly*.' " *Allen*, 721 F. App'x at 328 (emphasis added) (quoting *Templet*, 367 F.3d at 477, 479). Further, federal courts are courts of "limited jurisdiction," and it is presumed "that a suit lies outside this limited jurisdiction." *Howery*, 243 F.3d at 916. Because the amount in controversy has been challenged, "the plaintiff bears the initial burden of showing that it does not appear to a legal certainty that the claim for relief is less than the statutorily prescribed jurisdictional amount; it must do so with competent proof." Wright, *supra*, at § 3702.2. That is, the plaintiff must show "that there is a possibility of recovering more than the jurisdictional minimum, and must do so by a preponderance of the evidence supported by competent proof." Moore's, *supra*, at § 102.107.

Here, Plaintiff has failed to meet his burden. Although he was arrested for the crime of Public Intimidation, he was also arrested and duly convicted of Disturbing the Peace and Resisting an Officer. Plaintiff has submitted no evidence that these convictions were invalid. As demonstrated above, cases in which juries have awarded over $75,000 in damages involve

situations where the plaintiffs have suffered tremendous, continued mental anguish or extreme loss over an extended period of time.  Because of this, and because Plaintiff has failed to show that this Court has original jurisdiction over a state law claim that involves an amount in controversy in excess of $75,000, Plaintiff's motion will be denied.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion for Reconsideration* (Doc. 32) filed by Plaintiff John Rouse is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>July 23, 2020</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**